UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN J. MONACO | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil Action |
| v. | No. 04-2406 |
| CITY OF CAMDEN et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

William M. Tambussi, Esq.
Shawn C. Huber, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
     Attorneys for Plaintiff Steven J. Monaco

Emmett E. Primas, Jr., Esq.
The Heard Building
20 East Centre Street
Woodbury, NJ 08096
     Attorney for Defendants Sergeant Michael Hall and Officer
     Richard Verticelli

**SIMANDLE**, District Judge:

This matter is before the Court upon the motion of

Defendants Officer Richard Verticelli and Sergeant Michael Hall

(collectively, the "Defendants")[1] for summary judgment.  This

matter originated when Plaintiff, Steven J. Monaco ("Plaintiff")

filed a complaint alleging that certain defendants (including

Officer Verticelli and Sergeant Hall) violated his constitutional

_____

     [1]  Defendants are both police officers employed by the City
of Camden Police Department.

rights through the use of excessive force, unreasonable seizure and unlawful arrest while he was attending a concert at the Tweeter Center in Camden, New Jersey.  For the reasons expressed below, the Court will deny the Defendants' motion for summary judgment.

**I.   <u>BACKGROUND</u>**

On the evening of May 31, 2002, Plaintiff was in a parking lot located next to a concert venue (the Tweeter Center) in Camden, New Jersey preparing to attend a concert.  (Amended Complaint ¶ 12.)  Around 6:00 p.m, a fight broke out approximately thirty feet from Plaintiff.  (<u>Id.</u> ¶ 15-17.)  Soon after the fight broke out, the police arrived and ordered people to leave the scene.  (<u>Id.</u> ¶ 15-17.)  As Plaintiff began walking out of the parking lot at the behest of the police, Plaintiff alleges that he heard an officer shout "I think that is him" followed by several police officers throwing Plaintiff to the ground and striking him with night sticks.  (<u>Id.</u> ¶ 19-20.) According to Plaintiff, he was then transported to the Camden Police Station, pushed against a wall and threatened, searched, interrogated and put in a jail cell for two hours where he was verbally harassed by officers.  (<u>Id.</u> ¶ 27, 29-31, 33-38.)  After being confined for two hours, Plaintiff was removed from the cell and interrogated by a police officer about whether he had been drinking alcohol, but was never given a summons.  (<u>Id.</u> ¶ 38-45.)

Plaintiff was later released and sought medical treatment at Cooper University Hospital.  (Id. ¶ 49-50.)

On May 25, 2004, Plaintiff filed a Complaint against the City of Camden, the City of Camden Police Department and numerous police officers (including Officer Verticelli and Sergeant Hall) claiming that these defendants violated his constitutional rights through the use of excessive force, unreasonable seizure and unlawful arrest.  On March 9, 2005, this Court entered a Consent Order permitting Plaintiff to amend the Complaint (the "Amended Complaint")[2] naming Hall and Verticelli, among others, as defendants.[3]  [Docket Item Nos. 14-15.]

---

[2] Specifically, Plaintiff's ten-count Amended Complaint makes the following claims: (1) a 42 U.S.C. § 1983 ("Section 1983") claim that police used excessive force in Plaintiff's detention and arrest in violation of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights and conspiracy to violate those rights (Counts 1-4); (2) a claim of false arrest, false imprisonment and assault and battery (Count 5); (3) a claim of malicious prosecution (Count 6); (4) a violation of the New Jersey Constitution, Art. I, ¶¶ 1, 5 and 7 and conspiracy to violate the New Jersey Constitution (Counts 7 and 8); and (5) claims of negligence and emotional distress (Counts 9 and 10).

[3] On August 18, 2006, over two years after Plaintiff filed the Original Complaint in this matter, Plaintiff filed a motion for leave to file a Second Amended Complaint to add seven additional defendants replacing the John Does I - VII named in the Amended Complaint filed on March 9, 2005.  By order dated March 30, 2007, U.S. Magistrate Judge Ann Marie Donio denied Plaintiff's motion for leave to amend. [Docket Item No. 57.] Plaintiff appealed Judge Donio's decision to this Court, the appeal is pending and will be the subject of a forthcoming opinion of this Court.  The March 30, 2007 denial of Plaintiff's motion for leave to file a Second Amended Complaint, however, is of no consequence with respect to the motion for summary judgment currently before the Court as Defendants Verticelli and Hall were

Discovery commenced in this matter and Defendants Hall and Verticelli both testified that neither had ever seen Plaintiff before (Deposition Transcript of Officer Verticelli at 120) and certified that neither was present at the Tweeter Center on the night of the incident or had personal knowledge of the incident. (Def.'s Statement of Facts ¶¶ 16-17).  Verticelli testified and provided attendance records stating that he did not start work until 10:00 p.m. that night and Hall testified and provided attendance records showing that he worked his regular 8:30 a.m. to 4:30 p.m. shift in municipal court on May 31, 2002.  (Id. ¶¶ 19-21.)  Moreover, Defendants submitted police department "Special Assignment" records that purport to show which members of the Camden Police Department worked at the Tweeter Center on the night of the incident.  The "Special Assignment" records do not mention that either Defendant worked at the Tweeter Center on May 31, 2002.[4]  Finally, Defendants submit a police Incident Report for Plaintiff's arrest that also fails to mention the involvement of either Defendant.  (Id. ¶¶ 22-23.)

_____

added in an earlier amendment to the Complaint.

[4]  At his deposition, Sergeant Hall admitted that certain documents produced by the City of Camden (namely, the Special Assignment records) are not always accurate, (Deposition of Sergeant Hall at 37-38), and that the employment documents he relies upon do not actually show where he worked on the dates in question.  (Id. at 23-24, 26.)

Plaintiff, however, testified that Officer Verticelli and Sergeant Hall were directly involved in the incident. (Deposition Transcript of Steven Monaco at 82-87, 121, 126-27). Indeed, Plaintiff testified that he identified Officer Verticelli as the police officer who shouted "That's him! Get him!" that immediately preceded the attack upon him.  (Id. at 82-87.) Moreover, Plaintiff testified that Hall was the officer who slammed Plaintiff against a wall and threatened him.  (Id. at 121, 126-27.)  The testimony of an eyewitness, Nicole Pangborne, supports Plaintiff's version of events.  Specifically, Ms. Pangborne testified that Officer Verticelli was one of the six officers that came toward her and Plaintiff.  (Deposition of Nicole Pangborne at 36-44, 77-73.)  Ms. Pangborne also identified Officer Verticelli again as she reviewed a Camden Police photo book and testified that she also saw Sergeant Hall on the scene at the Tweeter Center the night of the incident.  (Id. at 73-76.)

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law."[5]  Fed. R. Civ. P. 56(c).  In deciding whether there is a
disputed issue of material fact, the court must view the evidence
in favor of the non-moving party by extending any reasonable
favorable inference to that party; in other words, "the nonmoving
party's evidence 'is to be believed, and all justifiable
inferences are to be drawn in [that party's] favor.'"  Hunt v.
Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is
whether there are "any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably
be resolved in favor of either party."[6]  Liberty Lobby, 477 U.S.
at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-
30 (3d Cir. 1995) (citation omitted).

## III. DISCUSSION

The only issue presented in Defendants' motion for summary
judgment is whether Defendants were present at the Tweeter Center
on the night of the incident.  Defendants' argue that there is no

---

[5] A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  See id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  See id.

[6] The moving party always bears the initial burden of
showing that no genuine issue of material fact exists, regardless
of which party ultimately would have the burden of persuasion at
trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);
Country Floors v. Gepner, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

genuine issue of material fact with regard to Plaintiff's claims against Defendants because neither Officer Verticelli nor Sergeant Hall had any contact with Plaintiff and have produced evidence (in the form of testimony and certifications) that they were not present at the time of the incident or at the time of Plaintiff's detention.  Defendants also argue that the documents submitted by Defendants (e.g., attendance records, employee time sheets, daily assignment reports and Special Assignment records) indicate that neither Defendant worked at the Tweeter Center on the day of the incident.  Finally, Defendants argue that summary judgment is appropriate because Plaintiff has provided no evidence to refute Defendants' account of the facts, aside from a "highly speculative" identification made by an eyewitness using Camden City police photograph albums.

The Court disagrees and, because a genuine issue of material fact exists, the Court will deny Defendants' motion for summary judgment.  First, the sole issue raised in Defendants' motion is whether these officers were present at the Tweeter Center on the night of the incident.  Undoubtably, the Defendants' presence at the Tweeter Center on the night in question is a material fact in this case.  Second, there is a genuine issue regarding this fact as, contrary to Defendants' assertion, there is considerable admissible evidence both that Defendants were present at the Tweeter Center on May 31, 2002 and had contact with Plaintiff.

7

Specifically, Plaintiff testified that Officer Verticelli and Sergeant Hall were involved in his arrest and detention, stating that (1) Officer Verticelli identified Plaintiff after a fight broke out in Plaintiff's vicinity and shouted "That's him! Get him!" and (2) Sergeant Hall slammed Plaintiff up against a wall and threatened him.  Moreover, an eyewitness to the incident, Ms. Pangborne, testified that (1) Officer Verticelli was one of the six officers that came toward her and Plaintiff and (2) Hall was also present at the scene on the night of the incident.  (Id. at 73-76.)  Finally, Plaintiff has presented evidence -- including the testimony of Sergeant Hall -- from which a reasonable jury can legitimately question the reliability of the documentary evidence produced by Defendants tending to show that they were not present at the Tweeter Center on the night of the incident.[7]

Based on this testimony, a jury could reasonably conclude that Verticelli and Hall are not to be believed and were present at the Tweeter Center on the evening of May 31, 2002 and that the documents suggesting otherwise are not reliable.  Certainly both Plaintiff's credibility (as the victim of the alleged tortious conduct) and Ms. Pangborne's credibility (as the only testifying

---

[7]  Specifically, Plaintiff points to the testimony of Sergeant Hall in which Hall admits that certain documents produced by the City are not always accurate.  Hall testified that he is aware of instances where a Special Assignment Sheet stated that an individual was not working a special assignment when in reality, the individual worked at the special assignment. (Hall Dep. Tr. at 37-39.)

eyewitness who is not a party to the case) as witnesses in this case are particularly relevant.  Here, a jury will have the benefit of observing live testimony when assessing the truthfulness of Plaintiff, Ms. Pangborne, Officer Verticelli and Sergeant Hall on the issue of the presence of the Defendants at, and participation in, the incident.  Indeed, the jury may also consider both Plaintiff's as well as Verticelli's and Hall's self-interest and credibility when deciding whose version of events to believe.  Finally, although Defendants characterize Ms. Pangborne's eyewitness testimony as "highly speculative," it is a jury's -- and not this Court's -- task to determine whether Ms. Pangborne's identification of Verticelli is to believed and how much weight it should be given.

Thus, viewing the evidence in the light most favorable to Plaintiff, and extending Plaintiff all reasonable inferences, the Court finds that a genuine issue of material fact exists regarding whether Officer Verticelli and Sergeant Hall were present at the Tweeter Center on May 31, 2002 and whether or not they were involved in the arrest and subsequent confinement of Plaintiff.  Accordingly, the Court will deny Defendants' motion for summary judgment.

**V.    <u>CONCLUSION</u>**

For the reasons expressed in this Opinion, the Court will deny the motion of Defendants Officer Verticelli and Sergeant

Hall for summary judgment.  The Court finds that viewing all evidence in the light most favorable to Plaintiff, that genuine issues of material fact exists regarding (1) whether Defendants were present at the Tweeter Center on the day of Plaintiff's arrest and detention and (2) whether Defendants were involved in the incidents surrounding Plaintiff's claims.  The accompanying Order is entered.

**May 18, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge