[relates to Docket Items 88 and 89]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN J. MONACO,<br><br>                    Plaintiff,<br><br>        v.<br><br>CITY OF CAMDEN, <u>et al.</u>,<br><br>                    Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil Action No. 04-2406<br><br>**<u>OPINION</u>** |

APPEARANCES:

William M. Tambussi, Esq.
Shawn C. Huber, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
     Attorneys for Plaintiff Steven J. Monaco

Emmett E. Primas, Jr., Esq.
The Heard Building
20 East Centre Street
Woodbury, NJ 08096
     Attorney for Defendants Sergeant Michael Hall and Officer
     Richard Verticelli

Mark M. Cieslewicz, Esq.
CITY OF CAMDEN OFFICE OF CITY ATTORNEY
City Hall, Suite 419
P.O. Box 95120
Camden, New Jersey 08101-5120
     Attorney for Defendants City of Camden, City of Camden
     Police Department, Officer Lawrence Norman, Officer Miguel
     Rodriguez and Officer Luis Sanchez

Cheryl L. Cooper, Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, PC
66 Euclid Street
PO Box 358
Woodbury, NJ 08096
     Attorney for Defendant Juan Rodriguez

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, NJ 08035
     Attorney for Defendant Shay Sampson

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

     Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that while he was attending a concert at the Tweeter Center in Camden, New Jersey, numerous police officers employed by the City of Camden Police Department ("Police Department") violated his constitutional rights and provisions of New Jersey law by unlawfully seizing, detaining, assaulting, and prosecuting him.  The Individual Defendants and the City Defendants have moved for summary judgment [Docket Items 88 and 89] as to all of Plaintiff's claims.  For the reasons explained below, the Court will deny Defendant Shay Sampson's motion for summary judgment as to Plaintiff's malicious prosecution claim, but will grant the remainder of the Individual Defendants' motion for summary judgment.  The Court will also deny the City Defendants' motion as to Plaintiff's constitutional law claims and his negligence claim, but will grant the City Defendants' motion as to Plaintiff's remaining state common law claims.

2

II.  **BACKGROUND**

A.  **The May 31, 2002 Incident and Municipal Court Action**

On May 31, 2002, Plaintiff was in a parking lot near the Tweeter Center, a performance venue in Camden, New Jersey, preparing to attend a concert. (Am. Compl. ¶ 12.) At approximately 6:00 p.m., a large fight erupted in the parking lot thirty feet away from the plaintiff, to which multiple City of Camden police officers responded, ordering everyone to vacate the parking lot. (Id. at ¶¶ 15-17.) Although Plaintiff was not involved in the fight, he claims that he was mistakenly identified by police officers as a participant, thrown to the ground, and beaten. (Id. at ¶¶ 16, 19-21.) Plaintiff alleges that he was then taken to the Camden Police Station, where he was searched, threatened, harassed, thrown against a wall, and interrogated. (Id. at ¶¶ 27-45.) Plaintiff was very seriously injured as a result of the officers' conduct, suffering a broken nose and a dislocated jaw, among other injuries. (Pl.'s Opp'n Br. Ex. V 126.)

After he had been detained in a cell for approximately two hours, (Am. Compl. ¶ 38), Plaintiff was taken to an interrogation room where Defendant Sampson was waiting. (Pl.'s Opp'n Br. Ex. V 132.) According to Plaintiff, Defendant Sampson asked Plaintiff what alcoholic beverages he had been drinking at the Tweeter Center, and when Plaintiff denied having consumed any alcohol

that evening, Defendant Sampson stated to him, "you were drinking.  What were you drinking?  You were drinking Coors Light . . . . [Y]ou either tell me you were drinking, or you're going to spend the night in jail."  (Id. at 133.)  Plaintiff felt "threatened" and "wanted to go to the hospital," and acceded to Defendant Sampson's demand.  (Id.)  Defendant Sampson then issued Plaintiff a summons for drinking in public, and told Plaintiff not to "even think about trying to fight this," threatening to "hit [him] with five other charges" if he did.  (Id.)  Shortly thereafter, Plaintiff was released from police custody.  (Id.) His friends, who had been waiting outside the police station, took him to the emergency room at Cooper Hospital, where he was treated for numerous injuries.  (Am. Compl. ¶¶ 50-51.)

On June 18, 2002, Plaintiff pled not guilty to the summons issued by Defendant Sampson.  (Id. at ¶ 52.)  In order to prepare Plaintiff's defense to the charge contained in the summons, Plaintiff's counsel requested various discovery materials from the Police Department, including a list of Government witnesses who were to testify in Municipal Court against Plaintiff on the public intoxication charge and any police reports that pertained to the events of May 31, 2002.  Plaintiff never received the witness list, and on July 3, 2002, he received a form from the Police Department stating that his request for police reports could not be processed because the Department was "unable to

4

locate any report." (Pl.'s Opp'n Br. Ex. M.) Defendant Sampson never appeared to testify in the Municipal Court proceedings, and the charge against Plaintiff was ultimately dropped for failure to prosecute. (Pl.'s Opp'n Br. Ex. Q 99.)

**B.   The City's Response to the May 31, 2002 Incident**

Shortly after the incident at the Tweeter Center occurred, Plaintiff and Police Department Captain Joseph Richardson were each interviewed on television by a news reporter about the fight and the police officers' response. (Pl.'s Opp'n Br. Ex. S 61.) Captain Richardson stated in the interview that if Plaintiff submitted a complaint about the events of May 31, 2002, the Police Department would investigate the matter. (Id. at 63.)

It appears that the Police Department did not investigate Plaintiff's allegation that he had been the victim of police misconduct until February 2005,[1] after Plaintiff filed his Complaint in this action.[2] (Pl.'s Opp'n Br. Ex. CC 14.)

---

[1] At the February 8, 2008 hearing, during which the Court heard oral argument on the motions presently under consideration, counsel for the City Defendants stated that when the City received Plaintiff's Tort Claims Act notice in 2002, it forwarded the claim to a private company called "CCMSI" to investigate Plaintiff's claim. According to the City, it never received a response from CCMSI concerning the investigation of Plaintiff's claim.

[2] As the Court explains, infra, Plaintiff filed this action in May 2004, naming the City of Camden, the Police Department, Captain Wayne Landham, and ten fictitious John Doe officers as defendants [Docket Item 1]. Plaintiff filed an Amended Complaint naming seven additional police officers, including Defendant Sampson, on March 8, 2005 [Docket Item 14].

Detective Xemaril Cruz, who works in the Police Department's
Internal Affairs division, was assigned to investigate
Plaintiff's allegations.  (Id. at 7, 14.)  As part of her
investigation, Detective Cruz conducted what she referred to
during her deposition as "interview[s]" of the police officers
who might have come into contact with Plaintiff on May 31, 2002.
(Id. at 24.)  Detective Cruz did not ask the officers any
questions at these interviews, but instead simply informed them
that an Internal Affairs investigation was underway and that they
were required to submit reports to her summarizing their
recollections of the Tweeter Center incident.  (Id. at 24-25.)
Based on the information she received in these reports, Detective
Cruz determined that Plaintiff's allegations had not been
sustained, which, as she explained during her deposition
testimony, meant that "there was an incident and there was an
assault involved, but it could not be determined if it was the
officers who . . . committed the assault . . . due to the large
fight that took place."  (Id. at 40.)  Detective Cruz did not
speak with the officers in order to clarify these indeterminate
findings or clarify the contents of their reports.  (Id. at 25.)
When asked during her deposition why she did not speak with the
officers and relied exclusively upon the contents of their
reports, Detective Cruz replied that "that's the way that we do
it."  (Id. at 25.)

C.    **Procedural History**

On May 25, 2004, almost two years after the Tweeter Center incident took place, Plaintiff filed this lawsuit against the City of Camden, the Police Department, Captain Wayne Landham, and ten fictitious John Doe police officers, claiming that these defendants violated his constitutional rights through the use of excessive force, unreasonable seizure and unlawful arrest.[3]  On March 9, 2005, nearly nine months after Plaintiff filed his complaint, the Court entered a Consent Order [Docket Item 15] permitting Plaintiff to file an Amended Complaint in which he named various individual police officer defendants, but retained his claims against individual John Doe Defendants I-X.[4]

On July 11, 2006, eyewitnesses to the event at the Tweeter Center were given the opportunity to view police photographs, and, according to Plaintiff, identified seven additional police officers who allegedly participated in the unlawful conduct on

---

[3]  Specifically, Plaintiff's Complaint alleges that the defendants unlawfully arrested him and used excessive force upon him, in violation of the Fourth Amendment (Count One), the Fifth and Fourteenth Amendment (Count Two), and his "civil rights as guaranteed by" 42 U.S.C. § 1983 (Count Three); that Defendants conspired to violate his rights (Counts Four and Eight); that Defendants' conduct violated New Jersey common law (Counts Five, Six, and Nine) and the New Jersey Constitution (Count Seven); and a claim for emotional distress (Count Ten).

[4]  The individual defendants newly named in the Amended Complaint are Officer Lawrence Norman, Officer Miguel Rodriguez, Sergeant Michael Hall, Officer Richard Verticelli, Officer Luis A. Sanchez, Officer Juan Rodriguez, and Officer Shay Sampson.

May 31, 2002.  (Pl.'s Br. 2.)  On August 18, 2006, more than two
years after Plaintiff filed suit and more than four years after
the events underlying this litigation took place, Plaintiff filed
a motion requesting leave to file a second amended complaint
naming the newly identified officers as defendants [Docket Item
44].  In her March 30, 2007 Order [Docket Item 57], Magistrate
Judge Ann Marie Donio denied Plaintiff's motion to amend, finding
that under the two-year statute of limitations for section 1983
actions in New Jersey, Plaintiff's filing was untimely because he
failed to satisfy the requirements under New Jersey law for his
amendment to relate back to the date of his original pleading.
Plaintiff appealed Magistrate Judge Donio's Order to this Court,
and in its July 23, 2007 Opinion and Order [Docket Items 67 and
68], the Court affirmed Magistrate Judge Donio's Order.  The
Court subsequently denied Plaintiff's motion for reconsideration
and for interlocutory review [Docket Items 101 and 102].

     The Individual Defendants and the City Defendants moved for
summary judgment, and at a February 8, 2008 hearing, the Court
heard oral argument from all parties as to the defendants'
motions and reserved decision.

**III. DISCUSSION**

**A.   Standard of Review**

     Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).

**B.   Individual Defendants' Motion for Summary Judgment**

The Individual Defendants argue that they are entitled to summary judgment as to all of Plaintiff's claims. They argue (1) that Plaintiff's claims against them must be dismissed because they are untimely; (2) that Plaintiff's civil rights conspiracy claim must be dismissed as a matter of law because there is no evidence of discriminatory animus; (3) that they are immune from liability under New Jersey's Tort Claims Act; and (4) that Plaintiff's malicious prosecution claim must be dismissed because Plaintiff has failed to show that the defendants acted maliciously. As the Court explains below, it will grant the

9

Individual Defendants' motion as to all claims except for
Plaintiff's claim for malicious prosecution against Defendant
Sampson, as to which the Individual Defendants' motion will be
denied.

      1.   <u>Statute of Limitations Defense</u>

The Individual Defendants first argue that the statute of
limitations on all of Plaintiff's claims against them expired
prior to the filing of the Amended Complaint naming them as
defendants, which, they argue, indicates that Plaintiff's claims
against them were not timely filed unless they relate back to the
date of the original filing under Federal Rule of Civil Procedure
15(c)(1)(C).  All of the parties agree that Plaintiff's Amended
Complaint naming the Individual Defendants was filed after the
statute of limitations on all of his claims had expired.
Plaintiff's claims in this matter are governed by New Jersey's
two-year statute of limitations for personal injury actions.
<u>Bougher v. University of Pittsburgh</u>, 882 F.2d 74, 78-79 (3d Cir.
1989) (holding that "all section 1983 claims are subject to the
state statute of limitations for personal injury actions" and
that the same "statute of limitations for personal injury actions
applies to section 1985(3) claims").  With the exception of
Plaintiff's malicious prosecution claim, the statute of
limitations on all of Plaintiff's claims began to accrue on the
date of his injury, May 31, 2002; Plaintiff's malicious

prosecution claim did not begin to accrue until "the underlying criminal proceedings [were] terminated in the plaintiff's favor," Rose v. Bartle, 871 F.2d 331, 348 (3d Cir. 1989), which in this case occurred on August 13, 2002.  Plaintiff's Amended Complaint was filed on March 9, 2005, nearly seven months after the statute of limitations on his malicious prosecution claim expired, and more than nine months after the statute of limitations on his remaining claims expired.

      "Under certain conditions, Federal Rule of Civil Procedure 15(c) provides for relation back, i.e., permitting an amended pleading to relate back to the date of the original complaint." DeRienzo v. Harvard Industries, Inc., 357 F.3d 348, 352-53 (3d Cir. 2004).  One such condition is provided by F. R. Civ. P. 15(c)(1)(C), which states that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . relation back is permitted by the law that provides the statute of limitations applicable to the action."  F. R. Civ. P. 15(c)(1)(C).  According to the Individual Defendants, New Jersey law contains two relation back provisions that are applicable to Plaintiff's claims – New Jersey Court Rule 4:26-4 (the "fictitious party" rule) and New Jersey Court Rule 4:9-3 (the "relation back" rule) – but Defendants argue that neither saves Plaintiff's claims against them in this case.  Plaintiff agrees with the Individual Defendants as to which relation back rules

are applicable to his claims, but argues that both provisions
permit the claims against the Individual Defendants contained in
his Amended Complaint to relate back to the date of his original
filing under Rule 15(c)(1)(C).  The Court addresses whether
Plaintiff can avail himself of the relation back provisions of
each rule in turn below.

     a.   <u>New Jersey Court Rule 4:26-4</u>

    New Jersey Court Rule 4:26-4 permits a plaintiff who does
not know the names of the defendant to identify a fictitious
defendant in his complaint and subsequently amend the complaint
to add new parties after the statute of limitations has expired.
As the Individual Defendants note, however, a plaintiff will be
precluded from using R. 4:26-4 if, through the use of diligence,
the defendant's identity could have been determined prior to the
running of the statue of limitations.  <u>See</u> <u>Marion v. Borough of</u>
<u>Manasquan</u>, 231 N.J. Super. 320, 334 (App. Div. 1989).  The
Individual Defendants argue that Plaintiff failed to exercise
such diligence prior to the expiration of the statute of
limitations.  First, as to Defendant Sampson, Defendants argue
that Plaintiff had ample opportunity to identify him before the
statute of limitations expired – Sampson issued Plaintiff the
"hand summons" on May 31, 2002; Sampson's name appears on this
summons; and, although Sampson did not appear at the Municipal
Court hearing at which Plaintiff's charges were dismissed,

12

Defendants argue that his name would have been read at the
hearing and appeared upon the court's docket as the complaining
witness.

The Individual Defendants argue that Plaintiff likewise
could have discovered the identities of the remaining officer
defendants prior to the expiration of the statute of limitations
with minimal diligence.  They reason that Plaintiff and his
eyewitnesses could have reviewed photographs of Camden County
police officers before the statute of limitations expired, and
that his failure to do so until after the expiration of the
statute of limitations exhibits Plaintiff's lack of diligence
under Rule 4:26-4.  They also note that Plaintiff did not contact
Camden Internal Affairs or the county prosecutor in order to
identify the officer defendants, further reflecting his failure
to exercise due diligence.[5]

Plaintiff argues that his claims against all of the
Individual Defendants relate back to the date of his initial
pleading under Rule 4:26-4 because he exercised diligent efforts
to ascertain the identities of the Individual Defendants before
and after the statute of limitations expired.  Plaintiff argues

---

[5]   The Individual Defendants also argue that Plaintiff
cannot take advantage of Rule 4:26-4's relation back provision
because his fictitious pleadings lack a specific description of
the officers, referring to them only as "John Does I-X."  This
argument is without merit, as the Amended Complaint does describe
the conduct Plaintiff alleges that the Individual Defendants
engaged in in detail.

that before the statute of limitations had run, he requested from the city as part of his defense in the Municipal Court proceedings the Police Department's reports relating to the May 31, 2002 incident, and was falsely informed that the Department had no such reports.[6]  (Pl.'s Opp'n Br. 9-10.)  As to Defendants' arguments with regard to his failure to identify Defendant Sampson in particular, Plaintiff argues that Officer Sampson's signature is illegible on the summons, that Officer Sampson never appeared in Municipal Court, and that he was not identified on a witness list for the Municipal Court proceedings.  (Id. at 12.)

The Court finds that Plaintiff has failed to satisfy the due diligence requirement of Rule 4:26-4.  Rule 4:26-4 provides in relevant part that

> [i]n any action . . . if the defendant's true name is
> unknown to the plaintiff, process may issue against the
> defendant under a fictitious name, stating it to be
> fictitious and adding an appropriate description
> sufficient for identification.  Plaintiff shall on
> motion, prior to judgment, amend the complaint to state
> defendant's true name, such motion to be accompanied by
> an affidavit stating the manner in which that information
> was obtained.

N.J. Court Rule 4:26-4.  As the Court of Appeals for the Third Circuit has recognized, "[t]he fictitious party rule may be used

---

[6]  Plaintiff also draws the Court's attention to the fact
that he deposed numerous Camden County police officers regarding
the events of May 31, 2002, including Officers Sampson and Reese
and Sergeant Hall.  (Pl.'s Opp'n Br. 10-11.)  These depositions,
however, all took place after the statute of limitations on his
claims expired.

only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." DeRienzo, 357 F.3d at 353.  It is "not available if a plaintiff should have known, by exercise of due diligence, defendant's identity prior to the expiration of the statute of limitations." Id. (citing Mears v. Sandoz Pharms., Inc., 300 N.J. Super. 622 (App. Div. 1997)) (emphasis added).  Although "[t]he New Jersey Supreme Court has not provided a standard definition of diligence, since the meaning of due diligence will vary with the facts of each case," it is clear that "plaintiffs must investigate all potentially responsible parties in a timely manner to cross the threshold for due diligence."  DeRienzo, 357 F.3d at 354 (internal quotations and citations omitted) (noting that Webster's Third New Int'l Dictionary defines "diligence" as the "devoted and painstaking application to accomplish an undertaking").  As the Appellate Division has noted,

> [i]f a plaintiff did not use diligence, and a court still permitted him or her to amend his or her original complaint to name a previously unknown defendant, it would not only fail to penalize delay on the plaintiff's part, but would also disregard considerations of essential fairness to the defendant, thereby violating the purpose behind the statute of limitations.

Mears v. Sandoz Pharms., Inc., 300 N.J. Super. at 630 (internal quotations and citations omitted).[7]

---

[7]  The Court recognizes that the Individual Defendants themselves were not especially diligent in raising this defense. However, "[a] defendant does not waive an affirmative defense if

Plaintiff failed to exercise due diligence in seeking to ascertain the Individual Defendants' identities prior to the expiration of the statute of limitations, as the fictitious party rule requires.  In the two years following the incidents giving rise to Plaintiff's cause of action, Plaintiff's efforts to identify the Individual Defendants responsible for injuring him appear to have consisted almost exclusively of having filed a discovery request for police reports in his Municipal Court action.[8]  Giving the Plaintiff the benefit of "all justifiable

raised at a pragmatically sufficient time with no prejudice to the plaintiff."  Klimowicz v. Unum Life Ins. Co. of America, No. 04-2990, 2007 WL 2904195, at *6 (D.N.J. Sept. 28, 2007) (citing Stafford v. E.I. Dupont de Nemours, 27 Fed. App'x. 137, 140 (3d Cir. 2002).  Plaintiff has not argued that he has been prejudiced in having to oppose the Individual Defendants' statute of limitations defense at this time.

[8]  At the February 8, 2008 hearing, Plaintiff for the first time raised the argument that the fact of his compliance with the statutory requirement to file a notice of tort claim pursuant to N.J.S.A. 59:8-8 should figure into the Court's due diligence analysis.  Although "the filing of a tort claims notice under N.J.S.A. 59:8-8 is an indispensable jurisdictional prerequisite to the prosecution of common law tort claims against a public entity," State v. J.R.S., --- A.2d ----,  2008 WL 215808, at *2 (App. Div. 2008), the Court does not find that such a filing evidences Plaintiff's diligence in attempting to ascertain the Individual Defendants' identities.  This is because the purpose of N.J.S.A. 59:8-8 is to afford the public entity the opportunity to "prepare a defense" and "correct the conditions or practices which gave rise to the claim."  Velez v. City of Jersey City, 180 N.J. 284, 290 (2004) (internal quotations and citations omitted).  That the public entity in this case appears not to have taken advantage of this opportunity may be relevant to the question, addressed infra, of whether the City adequately responds to excessive force claims, but it does not reflect the Plaintiff's diligence in seeking to identify the defendants in this case prior to the expiration of the two-year statute of limitations.

inferences," <u>Liberty Lobby</u>, 477 U.S. at 255, and accepting his assertion that the police report from the May 31, 2002 incident was deliberately withheld in the Municipal Court action,[9] Plaintiff's reliance on the discovery request is insufficient to show that he "investigate[d] all potentially responsible parties in a timely manner" prior to the expiration of the statute of limitations.  <u>DeRienzo</u>, 357 F.3d at 354 (internal quotations and citations omitted).  There are two reasons why this is the case.

First, even if the withheld report frustrated Plaintiff's capacity to identify the Individual Defendants – which, as the Court explains below, it did not – there were any number of additional steps available to Plaintiff during the pendency of the two-year statute of limitations that a reasonably diligent litigant could have pursued.  Plaintiff apparently made no effort before the statute of limitations expired to examine police officer photographs,[10] to speak with eyewitnesses about the identities of the allegedly culpable officers, or to review Police Department personnel records and rosters pursuant to New

_____

[9]  New Jersey Court Rule 7:7-7(b)(9) requires that in Municipal Court proceedings, a defendant be "allowed to inspect, copy, and photograph or to be provided with copies of any relevant . . . police reports that are within the possession, custody or control of the prosecuting attorney."

[10]  Indeed, as was argued before the Court at the February 8, 2008 hearing, it was only upon Plaintiff's examination of the Police Department's photographs of its officers – undertaken months after the statute of limitations on all his claims had expired – that Plaintiff identified the Individual Defendants.

Jersey's Open Public Records Law, N.J.S.A. 47:1A-1, et seq., just
to name a few of the steps that would have been readily apparent
and available to a minimally diligent plaintiff and his attorney.
Cf. DeRienzo, 357 F.3d at 355 (where Plaintiff, while in a body
cast, made four successive Freedom of Information Act requests to
identify the defendants prior to the expiration of the statute of
limitations, the court noted that "[w]hile he might have done
more . . . [the plaintiff] satisfied the due diligence
requirements").  Plaintiff could also have initiated this lawsuit
before May 25, 2004 – when just six days remained on the statute
of limitations on all but one of his claims – in order to use the
discovery process to aid himself in identifying the John Doe
defendants.  Plaintiff was continuously represented by his
present attorneys from the time of the municipal court
appearances in 2002 through the filing of suit in late May, 2004;
the prosecution had terminated in Plaintiff's favor on August 13,
2002, when 21 months remained to ascertain the unknown officers'
identities and file suit.  These causes of action were clearly
ripe in 2002 and court process would have been available in aid
of discovery of the identities of the John Doe defendants for
many months before the statute of limitations expired.

        Second, and more importantly, Plaintiff has failed to
explain how the purportedly withheld police report would have
facilitated his diligent efforts to identify the Individual

18

Defendants.  Defendant Sampson's Incident Report from the May 31,
2002 incident names only two police officers – Defendant Sampson
himself and Officer George Reese, who is not a party to this
action.  (Pl.'s Opp'n Br. Ex. P.)  Defendant Sampson's identity
would not have been unknown to any reasonably diligent litigant
in Plaintiff's shoes, since as of May 31, 2002, Plaintiff had in
his possession the summons Defendant Sampson had issued with the
name "Off. S. Sampson" clearly identified as the "Complaining
Witness."[11]  (Pl.'s Opp'n Br. Ex. L.)  Plaintiff has not
demonstrated or even suggested that he used the information in
the report to ascertain the identities of the Individual
Defendants who were not mentioned in the report; indeed,
Plaintiff did not depose Defendant Sampson or Officer Reese until
March 15, 2006, (Pl.'s Opp'n Br. Ex. Q), and July 17, 2006,
(Pl.'s Opp'n Br. Ex. R), respectively – more than a year after he
filed the Amended Complaint naming the Individual Defendants and
more than fifteen months after he received the incident report.

---

[11]  Plaintiff's argument that Defendant Sampson's name is
"not easily readable" on the summons is not convincing.  (Pl.'s
Opp'n Br. 12.)  Officer Sampson's name appears three times on the
summons.  While Plaintiff might reasonably argue that Defendant
Sampson's two signatures on the summons are difficult to
decipher, his name is also printed neatly in the middle of the
summons next to the words "Complaining Witness," where it is
clearly legible.  (Pl.'s Opp'n Br. Ex. L.)  Even if, for the sake
of argument, Sampson's name could not be fully deciphered, a
simple inquiry of the prosecutor, or of the court clerk, or of
the Police Department, would have yielded the identity of the
officer who signed the charging document.

In short, the failure to provide this police report is not
material, in that its nonproduction did not frustrate Plaintiff's
ability to identify the Individual Defendants.  The incident
report, as noted, contained only two names – Officer Sampson
(whose identity was known from the summons since May, 2002) and
Officer Reese (who is not sought to be named as a defendant in
any event).

The Court recognizes, of course, that a plaintiff need not
be successful in identifying the correct defendants prior to the
expiration of the statute of limitations in order to satisfy Rule
4:26-4's diligence requirement.  The very purpose of the Rule is
to preserve the claims of a litigant who "investigate[s] all
potentially responsible parties in a timely manner" and is
nonetheless unable to identify the correct defendants before the
statute of limitations on his claims expire.  DeRienzo, 357 F.3d
at 354 (internal quotations and citations omitted).  However, a
plaintiff must take some steps aimed at identifying a defendant
within the statute of limitations period in order to cross the
diligence threshold, and Plaintiff's inaction after not receiving
a single document – a document which, when ultimately produced,
Plaintiff did not actually use to identify potentially culpable
parties – fails to meet this requirement.  The Court accordingly
finds that the claims against the Individual Defendants named in

the Amended Complaint do not relate back to the date of
Plaintiff's original filing under Rule 4:26-4.


      b.  New Jersey Court Rule 4:9-3

The Court next considers whether Plaintiff may avail himself
of the relation back provisions of New Jersey Court Rule 4:9-3.
To take advantage of Rule 4:9-3, the Individual Defendants note,
a plaintiff must show that

> (1) the claim asserted in the amended complaint arose out
> of the conduct, transaction, or occurrence alleged or
> sought to be alleged in the original complaint; (2) the
> new defendant had sufficient notice of the institution of
> the action not to be prejudiced in maintaining his or her
> defense; and (3) the new defendant knew or should have
> known that, but for the misidentification of the proper
> party, the action would have been brought against him or
> her.

Viviano v. CBS, Inc., 101 N.J. 538, 553 (1986).  A newly added
defendant, according to the Individual Defendants, must have
received "actual or constructive notice" within the statute of
limitations period in order for Rule 4:9-3 to apply.  Arroyo v.
Pleasant Garden Apartments, 14 F. Supp. 2d 696, 701 (D.N.J.
1998).  Defendants argue that no evidence in the record suggests
that any of the Individual Defendants received such notice within
the statute of limitations period, and, as such, they would be
prejudiced in being forced to litigate this case without having
the benefit of such notice before the expiration of the statute
of limitations.

Plaintiff argues that his claims against the Individual Defendants should relate back under Rule 4:9-3 because the Individual Defendants should have known about his lawsuit within the statute of limitations.  He points to four facts that should have put the Individual Defendants on notice of the pendency of his suit: (1) shortly after the incident, Police Captain Richardson told the media that any complaints about the incident would be investigated; (2) the Police Department indeed conducted an internal investigation of the incident; (3) the Individual Defendants' employer, the City of Camden, was sued in the original Complaint; and (4) there was one lawsuit related to this matter pending before this Court within the statute of limitations period.  (Pl.'s Opp'n Br. 14-15.)

The Court finds that Plaintiff's claims against all of the Individual Defendants except for Defendant Sampson do not satisfy the notice requirements of Rule 4:9-3.  With regard to Defendant Sampson, the Court finds that Plaintiff's malicious prosecution claim satisfies the notice requirement and relates back under Rule 4:9-3, but that the remainder of Plaintiff's claims against Defendant Sampson do not relate back.  Under Rule 4:9-3,

> the plaintiff has the burden to prove that a defendant, who was added to the complaint after the expiration of limitations period, received notice within that period. This notice must be either actual notice of the litigation or constructive notice, through an adequate description of a fictitious or misnamed party in the complaint.

22

<u>Arroyo v. Pleasant Garden Apartments</u>, 14 F. Supp. 2d 696, 701
(D.N.J. 1998) (citing <u>Viviano v. CBS, Inc.</u>, 101 N.J. 538, 553
(1986)).  Rule 4:9-3 "expressly requires 'notice of the
institution of the <u>action</u>,' not just of a [potential] claim."
<u>Otchy v. City of Elizabeth Bd. of Educ.</u>, 325 N.J. Super. 98, 107
(App. Div. 1999) (quoting N.J. Court Rule 4:9-3) (emphasis
added).

     Of the four facts cited by Plaintiff as evidence of the
notice to Individual Defendants of his lawsuit, only the third –
that he sued the City of Camden in his original Complaint – comes
close to suggesting that the Individual Defendants had notice of
his suit within the statute of limitations period.  Captain
Richardson's statement to news media "[s]hortly after the
incident," (Pl.'s Opp'n Br. 14), that the matter would be
investigated cannot possibly have provided notice of the
institution of Plaintiff's action, since Plaintiff did not
commence his action until nearly two years after this statement
was made.  Moreover, the Internal Affairs investigation itself
could not have provided the Individual Defendants with notice
within the statute of limitations period, since it was not
undertaken until February 2005, months after the statute of
limitations had expired.  (Pl.'s Opp'n Br. Ex. CC 14.)  Finally,
the pendency of an additional lawsuit brought by different
plaintiffs for different injuries would not have alerted the

Individual Defendants to the institution of Plaintiff's <u>action</u>, as Rule 4:9-3 requires.  <u>See</u> <u>Otchy</u>, 325 N.J. Super. at 107 (App. Div. 1999) (noting that Rule 4:9-3 "expressly requires 'notice of the institution of the action,' not just of a claim") (quoting N.J. Court Rule 4:9-3).  Accordingly, the majority of facts cited by Plaintiff do not suggest that the Individual Defendants had notice of the institution of his action as Rule 4:9-3 requires.

The fact that the Individual Defendants' employer was named as a defendant in the original Complaint presents a closer question.  It is likely that the City of Camden, having been served as a defendant in a lawsuit in which numerous "John Doe" police officer defendants were also named, would ultimately have notified its police force of the lawsuit in order to alert potential officer defendants of their potential liability.  <u>See</u> <u>Love v. Rancocas Hosp.</u>, 270 F. Supp. 2d 576, 581 (D.N.J. 2003). However, the statute of limitations on all of Plaintiff's claims – except his claim for malicious prosecution – expired on May 31, 2004, just days after Plaintiff's Complaint was filed and before the City of Camden was even served with the Summons and Complaint on June 14, 2004 [Docket Item 2].  In light of this timing, the Court cannot conclude, as a matter of law, that the Individual Defendants had notice of the institution of Plaintiff's action prior to the expiration of the statute of

limitations.  Faced with similar circumstances, the court in <u>Love</u>

noted that its

> decision turns on the fact that Plaintiff filed an
> amended complaint against [the employer,] Sunset Road,
> Dr. Blank, and Greenberg just days before the expiration
> of the two-year statute of limitations. Had Plaintiff
> amended the complaint to add these Defendants months
> before the statute of limitations ran, the Court's
> conclusion may be different. It is possible and indeed
> probable that, given a reasonable amount of time, [the
> employer] would have discovered that Dr. Levin and not
> Dr. Blank was Plaintiff's treating physician and notified
> Dr. Levin that he may be the subject of a lawsuit.
> However, because Defendants did not have a reasonable
> amount of time to discover Plaintiff's mistake before the
> limitation period ran, the Court cannot assume that Dr.
> Levin did have or should have had the opportunity to
> learn of the case.

<u>Love</u>, 270 F. Supp. 2d at 581-82.  Indeed, <u>Love</u>'s reasoning

applies with even greater force in this case, since City was not

even served with the Complaint until after the statute of

limitations on all but one of Plaintiff's claims had expired.

With the exception of Plaintiff's malicious prosecution claim

against Defendant Sampson, therefore, the Court finds that the

claims against the Individual Defendants in the Amended Complaint

do not relate back to the date of his original pleading under

Rule 4:9-3, indicating that his claims against these defendants

were untimely filed.[12]

---

[12]   In their motion for summary judgment, the Individual
Defendants raise the additional argument that Plaintiff's claims
against them do not relate back under F. R. Civ. P. 15(c)(1)(C).
Plaintiff does not address this argument, appearing to concede
that his claims against the Individual Defendants do not relate
back under this Rule.

By contrast, the Court finds that Plaintiff's malicious prosecution claim against Defendant Sampson does relate back to the date of Plaintiff's original filing under Rule 4:9-3. As the Court explained, supra, while the statute of limitations for nearly all of Plaintiff's claims began to accrue on the date of his injury – May 31, 2002 – his malicious prosecution claim did not begin to accrue until "the underlying criminal proceedings [were] terminated in [his] favor," Rose, 871 F.2d at 348, which in this case occurred on August 13, 2002. The two-year statute of limitations on Plaintiff's malicious prosecution claim thus did not expire until August 13, 2004, about two months after the City was served with Plaintiff's Complaint on June 14, 2004. In light of the fact that the City's own summons and complaint against Plaintiff – which form the basis of his malicious prosecution claim – clearly lists "Off. S. Sampson" as the "Complaining Witness," (Pl.'s Opp'n Br. Ex. L), and given both the specificity of the facts underlying the malicious prosecution claim described in the Complaint and the substantial amount of time the City had to notify Defendant Sampson of the suit before August 13, 2004, the Court finds that Plaintiff's malicious prosecution claim against Defendant Sampson meets Rule 4:9-3's

notice requirements and relates back to the date of his original pleading.[13]  See Love, 270 F. Supp. 2d at 581.

       c.   Summary of Statute of Limitations Holding

In summary, the Court finds that Plaintiff's claim for malicious prosecution against Defendant Sampson relates back to the date of his original pleading under Federal Rule of Civil Procedure 15(c)(1)(C) and New Jersey Court Rule 4:9-3.  The Court finds that the remainder of Plaintiff's claims against the Individual Defendants do not relate back to the date his Complaint was filed and are barred by the statute of limitations, and will thus grant the Individual Defendants' motion for summary judgment as to those claims.

       2.   Tort Claims Act

Defendant Sampson argues that even if Plaintiff's claim for malicious prosecution against him is not barred by the statute of limitations, Plaintiff is not entitled to recover damages for

---

    [13]  In his Amended Complaint, Plaintiff asserts his malicious prosecution claim not only against Defendant Sampson, but against all of the defendants "jointly [and] severally." (Am. Compl ¶ 74.)  Plaintiff's own deposition testimony, however, refers only to Defendant Sampson's role in the events underlying the allegedly malicious prosecution, and Plaintiff has not presented any evidence indicating that any of the other Individual Defendants were involved in the prosecution.  (Pl.'s Opp'n Br. Ex. V 132-36.)  Given the absence of evidence from which "a reasonable jury could return a verdict for [Plaintiff]" as to any defendant but Defendant Sampson on the malicious prosecution claim, Liberty Lobby, 477 U.S. at 248, the Court will grant the remaining Individual Defendants' motion for summary judgment as to that claim.

pain and suffering on this claim because he does not meet the
requirements imposed by the New Jersey Tort Claims Act in order
to recover damages for pain and suffering from a public
employee.[14]  The Court will deny Defendant Sampson's motion.
Under N.J.S.A. 59:9-2(d),

> [n]o damages shall be awarded against a public entity or
> public employee for pain and suffering resulting from
> any injury; provided, however, that this limitation on the
> recovery of damages for pain and suffering shall not
> apply in cases of permanent loss of a bodily function,
> permanent disfigurement or dismemberment where the
> medical treatment expenses are in excess of $3,600.00.

N.J.S.A. 59:9-2(d).  The Act's provision of immunity to public
employees – including N.J.S.A. 59:9-2(d)'s so-called "verbal
threshold" immunity – is not available, however, in cases where
the employee acted outside the scope of his or her duties,
criminally, or maliciously; section 59:3-14(a) of the Act
provides that "[n]othing in this act shall exonerate a public
employee from liability if it is established that his conduct was
outside the scope of his employment or constituted a crime,
actual fraud, actual malice or willful misconduct."  N.J.S.A.

---

[14]  The Court recognizes that the parties' arguments
regarding N.J.S.A. 59:9-2(d) are directed at Plaintiff's claims
in general, rather than at the malicious prosecution claim in
particular.  Having found that the Individual Defendants are
entitled to summary judgment as to all claims save for the
malicious prosecution claim asserted against Defendant Sampson,
but finding no basis to conclude that Plaintiff's alleged
psychological injuries do not relate, at least in part, to the
allegedly malicious prosecution, the Court will thus addresses
the applicability of N.J.S.A. 59:9-2(d) to Plaintiff's remaining
claim.

59:3-14(a).  As the Appellate Division reasoned in <u>Taglieri v.</u>
<u>Moss</u>,

> [t]he plain language of N.J.S.A. 59:3-14 is beyond
> dispute. "<u>Nothing</u> in this act shall exonerate" such an
> employee.  We see no indication in the Act and no
> evidence that the Legislature intended anything other
> than what it said.  The Legislature's intent with respect
> to the relationship between N.J.S.A. 59:3-14 and the
> verbal threshold provision of the Act is evidenced in the
> 1972 Task Force Comment to N.J.S.A. 59:3-14: "It is the
> intent of this provision that a public employee guilty of
> outrageous conduct cannot avail himself of the
> limitations as to liability <u>and</u> <u>damages</u> contained in this
> act."

367 N.J. Super. 184, 195-96 (App. Div. 2004) (emphasis supplied
in original); <u>see also</u> <u>Kelly v. County of Monmouth</u>, 380 N.J.
Super. 552, 562-63 (App. Div. 2005); <u>Jobes v. Evangelista,</u>

369 N.J. Super. 384, 400 (App. Div. 2004).[15]  Thus, as to
Plaintiff's claim for malicious prosecution against Defendant
Sampson - in which Plaintiff is required to establish that
Defendant Sampson's conduct in initiating or continuing the
prosecution constituted "actual malice or willful misconduct,"
N.J.S.A. 59:3-14(a) - section 59:9-2(d)'s verbal threshold is
inapplicable.

           3.  <u>Evidence of Malice</u>

    Finally, Defendant Sampson argues that he is entitled to
summary judgment as to Plaintiff's malicious prosecution claim
because there is no evidence in the record from which a jury
could find that he acted maliciously.  The Court disagrees.  In

---

[15]  In an unreported decision, the Appellate Division of the
Superior Court reasoned that the broad language of the New Jersey
Supreme Court in <u>DelaCruz v. Borough of Hillsdale</u>, 183 N.J. 149,
164 (2005) - namely, that "the need to vault the verbal threshold
is not limited to false arrest or false imprisonment claims; the
Act makes no such distinctions and, instead, treats all torts
similarly" - indicates that the verbal threshold should apply to
cases of actual malice and willful misconduct.  <u>See Toto v.
Ensuar</u>, 2007 WL 1790696 (App. Div. June 22, 2007).
Notwithstanding the plain language of N.J.S.A. 59:3-14 and
"conced[ing that the cited language] is dicta," <u>id</u> at *7, the
court determined that section 59:3-14 "does not eliminate the
necessity of a plaintiff vaulting the verbal threshold, even when
the plaintiff's injuries were sustained as a result of a public
employee's willful misconduct."  <u>Id.</u> at *6.  Given that <u>Toto</u> is
an unreported opinion, and, more importantly, that the court's
conclusion is at odds with the clear language of section 59:3-14,
this Court will adopt the sounder conclusion of <u>Kelly v. County
of Monmouth</u>, in which the Appellate Division distinguished
<u>DelaCruz</u> on the grounds that the public employee defendants in
that case "were arguably acting under color of law, and thus
arguably within the scope of employment, when they falsely
arrested and imprisoned the plaintiff."  380 N.J. Super. at 563.

order to prove a claim of malicious prosecution, a Plaintiff must show "(1) the defendant has initiated a criminal proceeding; (2) the proceeding ends in plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendant acts maliciously or for a purpose other than bringing the defendant to justice." Morales v. Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997).  In this case, a reasonable jury could reasonably infer from Plaintiff's deposition testimony that Defendant Sampson knew that Plaintiff had not consumed alcohol on May 31, 2002, but nonetheless threatened Plaintiff that if he did not plead guilty to the charge, he would be "hit with five other charges."  (Pl.'s Opp'n Br. Ex. V 133-34.)  This evidence is bolstered by the fact that the public intoxication citation Defendant Sampson issued was ultimately dismissed for failure to prosecute due to Defendant Sampson's repeated failure to appear in Municipal Court to testify.  (Pl.'s Opp'n Br. Ex. Q 99.)  Drawing all inferences in Plaintiff's favor, this evidence is sufficient to show that Defendant Sampson acted "for a purpose other than bringing the defendant to justice," Morales, 972 F. Supp. at 261, and so Defendant Sampson's motion for summary judgment as to Plaintiff's malicious prosecution claim will be denied.

### C.   City Defendants' Motion for Summary Judgment

The City Defendants argue that they are entitled to summary judgment as to all of Plaintiff's claims.  Plaintiff disputes

these arguments and claims that triable issues of fact exist that preclude the entry of summary judgment in the City Defendants' favor.  The Court will deny the City Defendants' motion as to Plaintiff's constitutional claims and his negligence claim, but will grant their motion as to Plaintiff's remaining claims based on New Jersey common law.

### 1.   Claims Against the Police Department

Initially, the parties dispute whether the Police Department can be sued separately from the City of Camden.  The City Defendants argue that the Police Department cannot be sued in conjunction with the City of Camden because the Police Department is merely an administrative arm of the City itself.  See DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity.").  Plaintiff concedes this point "only as it relates to his § 1983 federal claims against the Police Department," but not as to his other claims.

The Court will dismiss the Police Department from this suit. "In New Jersey a municipal police department is not an entity separate from the municipality, N.J. Stat. Ann. § 40A:14-118 (municipal police department is 'an executive and enforcement function of municipal government'); therefore, the Camden Police

32

Department is not a proper defendant in this action." <u>Adams v.
City of Camden</u>, 461 F. Supp. 2d 263, 266 (D.N.J. 2006); <u>see also</u>
<u>Padilla v. Twp. of Cherry Hill</u>, 110 Fed. Appx. 272, 278 (3d Cir.
2004) (unpublished opinion); <u>DeBellis</u>, 166 F. Supp. 2d at 264.
Because the Department "is not an entity separate from the
municipality," <u>Adams</u>, 461 F. Supp. 2d at 266, it cannot be sued
in conjunction with the municipality, irrespective of the nature
of the plaintiff's claims.  The Court will thus dismiss the
Police Department from the suit.

     2.  <u>Constitutional Claims and Negligence Claim</u>

     The City argues that under the standard for municipal
liability under section 1983 set forth in <u>Monell v. Department of
Social Services</u>, 436 U.S. 658 (1978), and its progeny, it is
entitled to summary judgment as to Plaintiff's constitutional
claims because Plaintiff has failed to establish that a municipal
policy or custom caused the violation of his constitutional
rights.[16]  According to the City, a municipality is not liable
for its employees' section 1983 violations solely by virtue of

───────────────

    [16]  The City Defendants argue, and Plaintiff does not
dispute, that Plaintiff's claims in Count Seven of the Amended
Complaint for violations of the New Jersey Constitution are
governed by the same standards as his federal constitutional
claims.  <u>See</u> <u>Henry v. City of Woodbury</u>, No. 04-5151, 2007 WL
174170, at *4 (D.N.J. Jan. 19, 2007) (finding no authority to
suggest that a "court's analysis of claims brought pursuant to
the New Jersey Constitution for false imprisonment and malicious
prosecution is any different than the analysis of these same
claims brought pursuant to the United States Constitution").  The
Court will adopt the reasoning of <u>Henry</u>.

the employment relationship, because section 1983 does not countenance a <u>respondeat</u> <u>superior</u> theory of liability.  Instead, in order to hold a municipality liable for constitutional deprivations under section 1983, a plaintiff must identify a municipal policy or custom that directly caused his injury, pursuant to, <u>inter</u> <u>alia</u>, <u>Monell</u>, 436 U.S. at 694.  The City argues that in order for liability to attach, the municipality's conduct must be deliberate and the municipality must be the "moving force" behind the alleged injury, citing <u>Board of County Com'rs of Bryan County v. Brown</u>, 520 U.S. 397 (1997).  According to the City, Plaintiff simply has failed to sustain his burden of identifying deliberate conduct amounting to city policy that directly caused the injuries he alleges.

Although he concedes that making out a claim of municipal liability is "not easy," Plaintiff argues that he need only prove that "some link exists" between the municipal policy and the officers' conduct in order to hold the City Defendants liable. (Pl.'s Opp'n Br. 25) (citing <u>Linden v. Spagnola</u>, No. 99-2342, 2002 WL 1625414, at *7 (D.N.J. June 27, 2002)).  According to Plaintiff, he has presented evidence sufficient to raise triable factual questions as to the link between the City Defendants' policies and his constitutional deprivations.  First, Plaintiff claims that at the time of the May 31, 2002 incident, the City Defendants did not provide police officers with training on the

34

use of force apart from the officers' training at the Police
Academy.  (Pl.'s Opp'n Br. 26.)  Next, Plaintiff argues that the
Police Department's investigation of the May 31, 2002 incident
was inadequate.  (Id.)  Finally, Plaintiff claims that Defendant
Sampson had a history of excessive force claims, but the
Department allowed him to work without supervision.  (Id.)

The Court will deny the City's motion for summary judgment
as to Plaintiff's constitutional claims.  As the Supreme Court
held in Monell,

> a local government may not be sued under § 1983 for an
> injury inflicted solely by its employees or agents.
> Instead, it is when execution of a government's policy or
> custom, whether made by its lawmakers or by those whose
> edicts or acts may fairly be said to represent official
> policy, inflicts the injury that the government as an
> entity is responsible under § 1983.

Monell, 436 U.S. at 694; see also Jiminez v. All American
Rathskeller, Inc., 503 F.3d 247, 249 (3d Cir. 2007).  There must
be a "direct causal link between a municipal policy or custom and
the alleged constitutional deprivation" in order for municipal
liability to attach.  City of Canton v. Harris, 489 U.S. 378, 385
(1989).  As courts' repeated reference to municipal policies or
customs indicates, a plaintiff need not establish that a
municipal official issued an "official statement of policy" to
recover under Monell, but may instead show "that a course of
conduct constitutes a 'custom' when, though not authorized by
law, such practices of state officials are so permanent and well

35

settled that they operate as law." Jiminez, 503 F.3d at 250
(some internal quotations and citations omitted).  As the Court
of Appeals has recognized, where "the inadequacy of existing
practice [is] so likely to result in the violation of
constitutional rights[] that the policymaker can reasonably be
said to have been deliberately indifferent to the need," a victim
of such a violation may recover from the municipality.  Id.
(citation omitted).

     In this case, triable issues of fact exist as to whether the
inadequacy of the City's practices in investigating complaints of
excessive force and false arrest against its police officers
reflected its deliberate indifference to the risk of
unconstitutional officer misconduct, including the allegedly
unlawful actions Plaintiff alleges resulted in his injuries.  The
evidence in the record indicates that, despite the fact that the
Police Department was aware of Plaintiff's allegations of
excessive force shortly after the May 31, 2002 incident took
place, (Pl.'s Opp'n Br. Ex. S 62-63), the Department did not
launch an investigation into the matter until February 2005.
(Pl.'s Opp'n Br. Ex. CC 15-16.)  Moreover, while the City
received Plaintiff's tort claim notice in 2002, at the February
8, 2008 hearing before the Court, the City conceded that its
response to the notice was to forward it to a private company
called CCMSI for an investigation, pursuant to its normal custom,

36

but that it never heard back from CCMSI about the matter.  The
City has not identified any evidence suggesting that its response
to Plaintiff's allegations was delayed for reasons unique to
Plaintiff's case, or that, for instance, its referral of
Plaintiff's tort claim notice to CCMSI was a failed experiment or
one-time fluke rather than an example of its general
inattentiveness to complaints of police misconduct.

Further, the evidence in the record is sufficient for a jury
to find that when the Police Department ultimately did launch an
Internal Affairs investigation into Plaintiff's allegations, the
policies reflected in that investigation showed that the
Department was focused less on whether the abusive conduct had
taken place than on whether Plaintiff could successfully prove
his allegations.  Plaintiff's claim that the Department was, as a
matter of policy, insufficiently attentive to allegations of
serious police misconduct finds support in the deposition
testimony of Detective Cruz, who conducts investigations into
allegations of police misconduct for the Department's Internal
Affairs division.  In Plaintiff's case, Detective Cruz did not
speak in person with any police officers about whether they had
used excessive force upon Plaintiff or otherwise mistreated him;
rather, she asked them to put in writing their accounts of the
May 31, 2002 incident.  (Id. at 24-25.)  When these written
accounts produced indeterminate information as to whether or not

37

excessive force had been used, Detective Cruz apparently did not follow up either with the officers or with Plaintiff, but instead simply concluded that Plaintiff's allegations were "not sustained," finding that "there was an incident and there was an assault involved, but it could not be determined if it was the officers who . . . committed the assault . . . due to the large fight that took place." (Id. at 40.)  Detective Cruz's exclusive reliance upon the contents of the officers' reports, and her decision not to seek to resolve the ambiguity of the information gleaned in the investigation, was not an accidental oversight in this particular case, but was instead, as she testified, "the way that we do it."  (Id. at 25.)

As this discussion indicates, a reasonable jury could find, based on the evidence in the record, that it was the "well settled" custom of the City and the Police Department not only to fail to conduct timely investigations into allegations of excessive force, Jiminez, 503 F.3d at 250, but that when such investigations were ultimately performed, they were directed less toward detecting and correcting misconduct than toward shoring up the Department's and the officers' defenses.  A jury could reasonably find that such inattention to the question of whether police misconduct actually occurred was "so likely to result in the violation of constitutional rights" as to evidence the City's deliberate indifference to its officers' use of excessive force.

There is, moreover, a strong "connection between the . . . [allegedly inadequate policy identified] and the specific constitutional violation" Plaintiff alleges took place.  Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 412 (1997).  That is, Plaintiff's evidence, if proved at trial, indicates that the City was indifferent to the risk that its officers would use excessive force, which is, according to Plaintiff, precisely what allegedly took place on May 31, 2002.

Because there are triable issues of fact regarding Plaintiff's claim for municipal liability against the City, the Court will deny the City's motion for summary judgment as to Plaintiff's constitutional claims.[17]

### 3.    Remaining State Common Law Claims

The City argues that it is entitled to summary judgment as to the remainder of Plaintiff's claims.  As to Counts Five, Six, Eight, and Ten of the Amended Complaint, the City argues that in order to state a claim for false arrest, assault/battery, malicious prosecution, conspiracy, and intentional infliction of

---

[17]  The City also moves for summary judgment as to Plaintiff's claim for negligence in Count Nine of the Amended Complaint, arguing that "[P]laintiff has not developed any evidence to support a claim that the City negligently supervised the officer defendants in this case."  (City Defs.' Reply Br. 4.) Having already found that the evidence is sufficient to support a finding that the City was deliberately indifferent to the risks posed by its officers' conduct, the Court will deny the City's motion as to Plaintiff's negligence claim.

emotional distress, Plaintiff would have to establish that the
officers acted willfully.  Under the New Jersey Tort Claims Act,
however, a "public entity is not liable for the acts or omissions
of a public employee constituting a crime, actual fraud, actual
malice, or willful misconduct."  N.J.S.A. 59:2-10.  As to
Plaintiff's state law claims that are premised upon the
defendants' willful or intentional conduct, therefore, the City
argues that the Tort Claims Act immunizes it from these claims.

Plaintiff argues that the City is not entitled to summary
judgment as to his state law claims.  Plaintiff appears to argue
that because "a jury could find that the officer defendants
'negligently' misidentified Mr. Monaco as being involved in the
fight in the parking lot," the Tort Claims Act's willful
misconduct provision would not immunize the City.  (Pl.'s Opp'n
Br. 34-35.)

The Court will grant the City's motion for summary judgment
on Plaintiff's state common law claims contained in Counts Five,
Six, Eight, and Ten of the Amended Complaint.  These claims are
all premised upon the allegedly willful conduct of the individual
officers, and the Tort Claims Act immunizes public entities from
liability in cases where public employees engage in criminal,
fraudulent, malicious, or willful misconduct.  N.J.S.A. 59:2-10.
Plaintiff's effort to circumvent the immunity provisions of the
Tort Claims Act by arguing that a jury could find that the

officers engaged in negligent, rather than willful, conduct would not preserve his claims in Counts Five, Six, Eight, and Ten against the City, because in order to state a claim in any of these Counts, Plaintiff would have to establish that the defendants acted willfully.  In other words, if Plaintiff's evidence merely establishes that the officers acted negligently, then his claims in Counts Five, Six, Eight, and Ten would fail on the merits, irrespective of whether the City is immune, but if Plaintiff establishes that the officers acted willfully, then N.J.S.A. 59:2-10 would immunize the City from liability on these claims.  Meanwhile, Plaintiff's claim against the City for negligent supervision of its officers, set forth in Count Nine, as discussed above,[18] survives this motion.

## IV.  CONCLUSION

For the reasons discussed above, the Court will deny Defendant Sampson's motion for summary judgment as to Plaintiff's malicious prosecution claim, but will grant the remainder of the Individual Defendants' motion for summary judgment.  In addition, the Court will deny the City Defendants' motion for summary judgment as to Plaintiff's constitutional claims in Counts One, Two, Three, and Four and his negligence claim in Count Nine, but

_____

[18]  See n.17, supra.

41

will grant the remainder of the City Defendants' motion.  The accompanying Order will be entered.


**February 13, 2008**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge