IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEVEN J. MONACO, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 04-2406 (JBS) |
| v. | |
| CITY OF CAMDEN & OFFICER SHAY SAMPSON | **OPINION** |
| Defendants. | |

APPEARANCES:

William M. Tambussi, Esq.
Shawn C. Huber, Esq.
BROWN & CONNERY, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
     Attorneys for Plaintiff Steven J. Monaco

Mark M. Cieslewicz, Esq.
CITY OF CAMDEN OFFICE OF CITY ATTORNEY
City Hall, Suite 419
P.O. Box 95120
Camden, New Jersey 08101-5120
     -and-
Cheryl L. Cooper, Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, PC
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096
     Attorneys for Defendant City of Camden

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, NJ 08035
     Attorney for Defendant Shay Sampson

**SIMANDLE,** District Judge:

## I. INTRODUCTION

In this lawsuit, Plaintiff Steven J. Monaco alleged that while he was attending a concert at the Tweeter Center in Camden, New Jersey, several officers from the City of Camden Police Department used excessive force upon him and falsely arrested him in violation of his Fourth Amendment rights.  Plaintiff also asserted a claim for malicious prosecution under New Jersey common law against Officer Shay Sampson, who appears not to have arrested Plaintiff but who, on the evening of Plaintiff's arrest, back at police headquarters, issued Plaintiff a citation for drinking alcohol in public.

The matter was tried to a verdict before a jury.  The jury returned its verdicts on June 26, 2008, finding in favor of Defendants.  As to Plaintiff's claim against the City of Camden, the jury determined that officers not party to this lawsuit had unlawfully arrested Plaintiff and used excessive force upon him, but that the City itself did not cause such violations through a custom of deliberate indifference, and could not be held liable to Plaintiff for his injuries.  As to Plaintiff's claim against Defendant Sampson, the jury found that Plaintiff failed to prove that Defendant Sampson was liable for malicious prosecution.

Presently before the Court is Plaintiff's motion for a new trial [Docket Item 138], in which he argues that the jury's

verdict cannot be upheld because it was inconsistent.  For the reasons that follow, the Court finds that the jury's verdict was not inconsistent and will deny Plaintiff's motion.

**II. BACKGROUND**

   **A.   Summary of Plaintiff's Allegations**

On May 31, 2002, Plaintiff was in a parking lot near the Tweeter Center, a performance venue in Camden, New Jersey, preparing to attend a concert.  (Am. Compl. ¶ 12.)  At approximately 6:00 p.m., a large fight erupted in the parking lot, to which multiple City of Camden police officers responded.  (Id. at ¶¶ 15-17.)  According to Plaintiff, he did not participate in the fight, but as he was exiting the parking lot, he was misidentified as a participant by a group of police officers, who threw Plaintiff to the ground and beat him on the head with night sticks.[1]  (Id. at ¶¶ 15, 16, 20.)  Plaintiff was taken to the police station, where he was detained in a cell.  (Id. at ¶ 38.)  Plaintiff alleges that he was subsequently taken

---

[1] Plaintiff did not name any of the individual officers who arrested and used force upon him in his original Complaint, but instead named ten fictitious John Doe police officers as Defendants [Docket Item 1].  After the statute of limitations on his claims had expired, Plaintiff was granted leave to file an Amended Complaint [Docket Item 15], in which he named as Defendants various City of Camden police officers.  In its February 13, 2008 Opinion and Order, the Court found that Plaintiff's claims against these officers did "not relate back to the date his Complaint was filed and are barred by the statute of limitations," and granted these officers' motion for summary judgment.  Monaco v. City of Camden, No. 04-2406, 2008 WL 408423, at *10 (D.N.J. Feb. 13, 2008).

to a room to meet with Defendant Sampson, who urged Plaintiff to admit that he had consumed an alcoholic beverage earlier that evening.  Monaco v. City of Camden, No. 04-2406, 2008 WL 408423, at *1 (D.N.J. Feb. 13, 2008).  Feeling pressured and wanting to go to the hospital, Plaintiff stated that he had consumed beer, received a summons for drinking in public, and was released.  Id. The summons was dismissed for failure to prosecute after Plaintiff and his attorney appeared in court on two or three occasions and Defendant Sampson failed to appear.  Id. at *2.

Following the parties' summary judgment motion practice, two claims remained in the case for trial: (1) Plaintiff's claim against the City of Camden, in which he alleged that the allegedly unlawful arrest and excessive use of force were caused by the City's custom of deliberate indifference to excessive force complaints, and (2) Plaintiff's malicious prosecution claim against Defendant Sampson, brought pursuant to New Jersey law.

**B.   Witness Testimony and Jury Verdict**

This matter was tried before a jury between June 16, 2008 and June 26, 2008.  The Court summarizes herein only those portions of the testimony that are relevant to the disposition of Plaintiff's motion.[2]

---

[2] Plaintiff did not submit any portion of the trial transcript with his motion for a new trial.  The following discussion accurately summarizes the trial testimony, although, in view of Plaintiff's failure to submit the transcript, the Court's discussion contains no citations to the trial transcript.

1.   Plaintiff's Arrest

At trial, Plaintiff testified he neither was involved in the fight that broke out at the Tweeter Center on May 31, 2002, nor sought to become involved in the fight, but that he was nonetheless tackled by four City of Camden police officers and beaten repeatedly with night sticks.  Plaintiff provided a description of the officers who beat and arrested him on the evening in question, and, when questioned as to whether Defendant Sampson was present at the time of his arrest, testified that he was not certain whether or not Defendant Sampson was present during the beating and arrest, and that he had not asserted claims for unlawful arrest or excessive use of force against Defendant Sampson.

Defendant Sampson testified that he was on duty on May 31, 2002, and that he was dispatched to the Tweeter Center after the fight broke out.  Defendant Sampson testified that he had no recollection of seeing Plaintiff at the scene of the fight and stated that he did not place handcuffs on Plaintiff or place Plaintiff in the police van; according to Defendant Sampson, he first encountered Plaintiff at the police administration building.

2.   Summons for Alcohol Consumption

At trial, Plaintiff testified that he had not consumed alcohol on the evening of May 31, 2002.  However, Plaintiff

5

testified that when he was questioned at the police station by Defendant Sampson following his arrest, he stated to Defendant Sampson that he had been drinking a Coors Light beer in the hope that Defendant Sampson would terminate the interview and permit Plaintiff to go to the hospital.

Plaintiff's testimony that he admitted to Defendant Sampson that he had consumed alcohol in public that evening was corroborated by the testimony of both Defendant Sampson and Nicole Doran-Pangborne, Plaintiff's then-girlfriend.  According to Defendant Sampson's testimony, Plaintiff, when questioned by Sampson at the police station, stated that he had been tailgating and had consumed a Coors Light earlier in the evening.  Defendant Sampson expressly denied having threatened Plaintiff in order to elicit this confession.  Ms. Doran-Pangborne likewise testified that she overheard Plaintiff state to Defendant Sampson that he had consumed an alcoholic beverage earlier that evening, although Ms. Doran-Pangborne's testimony identified the beverage in question as a "Mike's Hard Lemonade."  Sampson issued the summons to Monaco who was then free to leave the police station.

### 3. Jury Verdicts

The jury returned its verdicts on June 26, 2008.  As to Plaintiff's claim against the City of Camden, the jury found that Plaintiff proved "that one or more Camden Police Officers deprived him of the right to be free from excessive use of force

6

. . . [as well as] the right to be free from unlawful arrest." (Docket Item 134 at 1.)  However, the jury found that Plaintiff failed to prove "that the City of Camden had an official custom of deliberate indifference to investigating complaints of excessive use of force by police officers, about which the City's decisionmaker within the Police Department actually knew or acquiesced," (id.), and accordingly returned a verdict in the City's favor.  As to Plaintiff's malicious prosecution claim against Defendant Sampson, the jury found that Plaintiff failed to "prove that Defendant Sampson is liable for malicious prosecution."  (Id. at 3.)

### III. DISCUSSION

In his motion for a new trial, Plaintiff argues that the jury's verdicts are irreconcilably inconsistent and that the matter should accordingly be retried pursuant to Rule 59(a)(1)(A), Fed. R. Civ. P.  According to Plaintiff, the jury's determination that the arresting officers – who are not parties to this action – lacked probable cause to arrest Plaintiff cannot be squared with its finding that Defendant Sampson did not maliciously prosecute Plaintiff.  Plaintiff argues that because the absence of probable cause is a common element of both a false arrest and a malicious prosecution claim, the jury's determination that the arresting officers lacked probable cause to arrest necessitated a finding that Defendant Sampson lacked

7

probable cause to prosecute.  The Court discusses the formidable bar that a party must clear when moving for a new trial on inconsistent verdict grounds, and explains why Plaintiff falls far short of this bar, in turn below.

### A. Rule 59(a)(1)(A) and Inconsistent Verdicts

Under Rule 59(a)(1)(A), Fed. R. Civ. P., the Court may grant a motion for a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Although inconsistent jury verdicts may constitute grounds for ordering a new trial, see Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co., 734 F.2d 133, 145 (3d Cir. 1984), a party is not entitled to a new trial "unless no rational jury could have brought back the verdicts that were returned."  Pearson v. Welborn, 471 F.3d 732, 739 (7th Cir. 2006) (internal quotations and citations omitted, emphasis added).[3]

When a party argues that a jury's general civil verdicts are inconsistent, the Court must "attempt to reconcile the jury's findings, by exegesis if necessary," to determine "whether the

---

[3] The Court of Appeals has explained that under certain circumstances, "consistent jury verdicts are not, in themselves, necessary attributes of a valid judgment," and that inconsistent verdicts may be upheld where the verdicts "appear[] to be the result of compromise, as opposed to jury confusion."  Montgomery County v. Microvote Corp., 320 F.3d 440, 451 n.5 (3d Cir. 2003). The question of jury compromise is not relevant in this case, in which, as the Court explains below, the jury's verdicts manifestly were not inconsistent.

jury could have, consistent with its instructions, rendered the challenged verdicts." Davignon v. Hodgson, 524 F.3d 91, 109 (1st Cir. 2008) (citations omitted). The Court "is obligated to reconcile the jury's verdict independently of whether the jury likely reasoned in the same fashion," ID Security Systems Canada, Inc. v. Checkpoint Systems, Inc., 249 F. Supp. 2d 622, 651 (E.D. Pa. 2003) (citation omitted), if such reconciliation can produce "a minimally plausible view of the case." McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 764 (3d Cir. 1990) (citation omitted). "In undertaking this analysis [the Court must] view the facts in the light most favorable to the verdict." Davignon, 524 F.3d at 109.

    **B.    Consistency of Verdicts**

Applying this standard to the matter presently under consideration, the Court has little difficulty holding that the jury's verdicts in this case were not inconsistent and that Plaintiff is not entitled to a new trial. The Court cannot agree with Plaintiff that the jury's finding that the arresting officers unlawfully arrested Plaintiff was "ineluctably inconsistent," Tolbert v. Queens Coll., 242 F.3d 58, 74 (2d Cir. 2001), with its determination that Defendant Sampson did not maliciously prosecute Plaintiff. It is true, as Plaintiff notes, that an absence of probable cause is a necessary element of both an unlawful arrest claim and a malicious prosecution claim. See,

9

e.g., Brunson v. Affinity Federal Credit Union, 402 N.J. Super. 430, 439 (App. Div. 2008) (malicious prosecution claim); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (false arrest claim).  However, "view[ing] the facts in the light most favorable to the verdict," Davignon, 524 F.3d at 109, the Court finds that there are at least two plausible ways to explain the jury's verdicts in a consistent fashion.

First, the jury could have found that although the arresting officers lacked probable cause to arrest Plaintiff, Defendant Sampson had probable cause to believe that Plaintiff had been drinking in public at the time he issued the citation.  In this respect, the jury could have credited Defendant Sampson's testimony that he had not been present during Plaintiff's arrest and first encountered Plaintiff at the police administration building.  As Plaintiff, Defendant Sampson, and Nicole Doran-Pangborne all testified, at the police administration building, Plaintiff admitted to Defendant Sampson that he had consumed an alcoholic beverage earlier that evening.  Indeed, Nicole Doran-Pangborne also testified that Plaintiff had been drinking alcohol at the parking lot as they and their friends awaited the concert.  Although Plaintiff testified that he made up his confession because he felt threatened by Defendant Sampson, Sampson testified that he did not threaten Plaintiff, and the jury was free to credit Sampson's account of their conversation at the

police station.  Again, Doran-Pangborne overheard Plaintiff's confession to Sampson at the station.  Based on Plaintiff's admission to Sampson that he had consumed alcohol while tailgating earlier that evening, the jury could have found that Sampson had probable cause to believe that Plaintiff had been drinking in public when he issued the citation.[4]  In short, the jury could have determined that even though the arresting officers lacked probable cause, Defendant Sampson, based on his conversation with Plaintiff at the police station, had probable cause to issue the citation.  This is certainly a "minimally plausible view of the case," McAdam, 896 F.2d at 764 (citation omitted), that reconciles the jury's false arrest and malicious prosecution verdicts.

In addition, there is a second, related explanation that plausibly reconciles the jury's verdicts.  Simply put, the jury could have found that Plaintiff failed to prove "that the defendant was activated by a malicious motive in prosecuting the criminal complaint against him." Brunson, 402 N.J. Super. at

---

[4] In his Reply Brief, Plaintiff suggests that evidence of his confession to Defendant Sampson should have been excluded under the fruit of the poisonous tree doctrine because it was tainted by the preceding unlawful arrest.  This argument is without merit.  The fruit of the poisonous tree doctrine cannot be invoked to support a civil claim for damages because "the doctrine is an evidentiary rule that operates in the context of criminal procedure and has generally been held to apply only in criminal trials." Jenkins v. City of New York, 478 F.3d 76, 91 n.16 (2d Cir. 2007) (internal quotations and citations omitted, emphasis added).

11

439, 441 (also noting that "malice" means "the intentional doing of a wrongful or unlawful act without just cause or excuse"). Notwithstanding Plaintiff's belief that "the evidence of malice was overwhelming in this case," (Pl.'s Br. at 7), the jury was free to disbelieve Plaintiff's testimony that Sampson threatened him into making a false confession about drinking in public, credit Sampson's testimony that he did not threaten Plaintiff, and find that Plaintiff thus failed to establish that Sampson engaged in the sort of intentionally wrongful conduct necessary to establish the malice element of a malicious prosecution claim. Id. at 441.  In other words, in light of Sampson's testimony that he did not threaten Plaintiff, and the testimony of Plaintiff, Sampson, and Ms. Doran-Pangborne that Plaintiff stated to Sampson that he had been drinking, the jury could have determined that Sampson reasonably believed that Plaintiff had been drinking in public, and accordingly did not commit "a wrongful or unlawful act without just cause or excuse" when he issued the citation to Plaintiff.  Id.

As the preceding discussion makes clear, the Court certainly cannot conclude that "no rational jury could have brought back the verdicts that were returned."  Pearson, 471 F.3d at 739. Viewing the facts in the light most favorable to the verdict, Davignon, 524 F.3d at 109, the Court finds that the jury's

verdicts were not inconsistent, and that Plaintiff is not entitled to a new trial.

## IV. CONCLUSION

For the reasons explained above, the Court will deny Plaintiff's motion for a new trial.  The accompanying Order will be entered.

**December 17, 2008**             **s/ Jerome B. Simandle**
Date             JEROME B. SIMANDLE
           United States District Judge